U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

FEB 1 6 2007

ROBERT H. SHEMWELL, CLERK
BY _____
DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION


RHODA E. STEVENSON,                    CIVIL ACTION
              Appellant               NO. CV05-1792-A

VERSUS

JO ANNE B. BARNHART, COMMISSIONER   JUDGE DEE D. DRELL
OF SOCIAL SECURITY,                 MAGISTRATE JUDGE JAMES D. KIRK
              Appellee


## REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Rhoda E. Stevenson filed an application for disability insurance benefits ("DIB") on July 23, 2003, alleging a disability onset date of July 1, 2002 (Tr. p. 54), due to "vertigo, spastic colon, allergies, hypoglycemia, fibromyalgia, arthritis, acid reflux, [and] mitral valve prolapse" (Tr. p. 72). That application was denied by the SSA (Tr. p. 25).

A de novo hearing was held before an administrative law judge ("ALJ") on November 4, 2004, at which Stevenson appeared with her attorney, a witness, and a vocational expert ("VE") (Tr. p. 215). The ALJ found that, although Stevenson suffers from severe[1] impairments of "hypoglycemia, fibromyalgia, gastroesophageal reflux disease, and mitral valve prolapse," she has the residual

---

[1] An impairment can be considered as not "severe" only if it is a slight abnormality which has such a minimal effect on the claimant that it would not affect his ability to work. Estran v. Heckler, 745 F. 2d 340, 341 (5th Cir. 1984).

functional capacity to occasionally lift/carry up to twenty pounds, frequently lift/carry up to ten pounds, stand and/or walk up to six hours in an eight hour day, sit up to six hours in an eight hour day, and occasionally push/pull with the upper and lower extremities, but cannot be exposed to fumes, chemicals, smoke or dust (Tr. p. 21). The ALJ concluded that Stevenson has the residual functional capacity to perform her past relevant work as a clerical worker and, therefore, was not under a disability as defined by the Social Security Act at any time through the date of her decision on March 17, 2005 (Tr. p. 21).

Stevenson requested a review of the ALJ's decision, but the Appeals Council declined to review it, and the ALJ's decision became the final decision of the Commissioner of Social Security ("the Commissioner").

Next, Stevenson filed an appeal in this court for judicial review of the Commissioner's final decision. Stevenson raises the following issues for review on appeal:

> 1. The Commissioner erred by failing to find Stevenson suffers from a listed impairment or a combination of impairments which meet or equal a listing, and by concluding that she can engage in substantial gainful activity.
>
> 2. The Commissioner erred by finding Stevenson can perform a wide range of light work.

Stevenson and the Commissioner filed appellate briefs, and the matter is now before the court for disposition.

## Summary of Pertinent Facts

Stevenson was 28 years old at the time of her administrative hearing on November 4, 2004 (Tr. p. 220), has a Bachelor of Science

2

degree in family and consumer sciences (Tr. p. 221), and past relevant work as a bank clerk who did bookkeeping, filing, and computer work (Tr. p. 223).

In July 2000 and 2001, Stevenson was seen for complaints of musculoskeletal pain (Tr. pp. 121, 126, 128), as well as sinusitis, indigestion, dizziness, headaches, earaches, and laryngitis (Tr. pp. 124-142, 168-170).  Stevenson was prescribed Claritin for allergies and her allergy shots were continued (Tr. 121, 135-136, 139-140, 170).

Stevenson was treated for stomach problems due to H. Pylori in 2002; symptoms included cramping, diarrhea, and pain (Tr. pp. 119-123).

In March 2002, Stevenson was treated by Dr. Robert C. Hernandez, an internist, for gastroesophageal reflux, chronic allergies and rhinitis, hypoglycemia, fibromyalgia, and atypical chest pain (Tr. pp. 148-149, 166).  In April 2002, Dr. Hernandez suspected gastroesophageal reflux as well as recurring H. Pylori, and continued her on Nexium, Claritin, exercise, and anti-inflammatories or Tylenol as needed (Tr. p. 146).

In April 2002, Stevenson underwent an echocardiogram and was diagnosed with mitral valve prolapse[2] without associated mitral regurgitation (Tr. p. 162).  Stevenson had a 60 to 65 percent left

---

[2] Mitral valve prolapse is a heart problem in which the valve that separates the left upper and lower chambers of the heart does not open and close properly.  MEDLINEplus Health Information, Medical Encylopedia: mitral valve prolapse, *available at* http://www.nlm.nih.gov/medlineplus/encyclopedia.html (a service of the U.S. National Library of Medicine and the National Institutes of Health).

3

ventricular ejection fraction (Tr. pp. 161-162).

In November 2002, Stevenson was seen for complaints of fatigue and malaise, and was found to have mild pharyngitis and alopecia; her Claritin and allergy shots were continued (Tr. p. 144).

In September 2003, Stevenson was examined by Dr. Larry Broadwell, a rheumatologist, who found diffuse pain by history, no joint swelling, a normal range of motion in all joints, and "tender points in appropriate locations compatible with fibromyalgia," and prescribed education, stretching, exercising, and medication for sleep (Tr. pp. 163, 167). Dr. Broadwell further stated that patients most often do not get better if they stop working, and that Stevenson can perform light or sedentary work which permits her to move about, but with no sustained or repeated flexion of the neck, no sustained or repeated flexion of the back, and no heavy lifting, sitting more than 30 to 45 minutes, or standing still for more than 15 to 30 minutes (Tr. p. 163).

In December 2003, Stevenson was seen for complaints of fatigue, nausea, occasional faintness, and pain, and was diagnosed with fatigue, fibromyalgia, insomnia, and gastro-esophageal reflux disease; Stevenson was prescribed Prilosec and Elavil, and was given referral appointments (Tr. p. 175-176).

Stevenson was seen in the L.S.U. Health Sciences Center Rheumatology clinic in April 2004. Stevenson was diagnosed with fibromyalgia with six tender points (Tr. p. 181). Dr. Seth Mark Berney, a rheumatologist, did not find any underlying rheumatologic or autoimmune illness, and recommended that Stevenson take Aleve as

4

her pain medication, Elavil as a sleep aid, and exercise daily, and consider a pain management clinic if these measures were inadequate for her pain (Tr. p. 177).

In July 2004, Dr. John Sandifer (specialty unknown) diagnosed possible fibromyalgia due to complaints of discomfort on neck extension; there were no areas of tenderness, her neurological exam of both upper extremities was normal, and x-rays of her cervical spine were normal; Dr. Sandifer administered a shot of Decadron to help with her "vague symptoms" (Tr. pp. 183-184).

Dr. Gregory Bell, a family practitioner, treated Stevenson for allergies in 2003-2004 (Tr. pp. 164, 186-188, 202-207).

Stevenson underwent a psychological evaluation in December 2004 (Tr. pp. 194-198). She was diagnosed with general pain disorder associated with both psychological factors and a general medical condition at Axis 1, and dependent personality disorder at Axis II (Tr. p. 197).[3] It was also surmised that Stevenson probably tends to react to stress by developing physical symptoms, probably has longstanding personality factors predisposing her to develop physical symptoms under stress, and probably views her problems as physical, failing to recognize that psychological factors contribute to her symptoms. However, there was no

---

[3] The axial system of evaluation enables the clinician to comprehensively and systematically evaluate a client. Axis I refers to clinical syndromes, Axis II to developmental disorders and personality disorders, Axis III to physical disorders and conditions, Axis IV to psychosocial stressors, and Axis V to the global (overall) assessment of functioning. Diagnostic and Statistical Manual of Mental Disorders, Text Revised, pp. 25-35 (4th ed. 2000) ("DSM-IV-TR").

indication that emotional or mental problems would prevent Stevenson from working (Tr. pp. 198-201).

At her administrative heading, Stevenson testified that she was 28 years old, 5/6" tall, weighed about 135 pounds, does not use tobacco, alcohol or illegal drugs, graduated from college, and has not worked since July 2002 (Tr. pp. 220-222). Stevenson worked in a bank for about four years, and was laid off due to health reasons because she missed too much work (Tr. pp. 222-223).

Stevenson testified she carries food with her all the time in case her blood sugar drops and she becomes faint; the first time she fainted from hypoglycemia was when she was two and the last time was about three months before the hearing (Tr. p. 225). Stevenson said the hypoglycemia also causes shaking in her hands and problems with concentrating (Tr. p. 226).

Stevenson also suffers from acid reflux, for which she takes Nexium and Pepcid, a spastic colon for which she needs to stay near a bathroom and for which she takes medication that makes her feel bad, vertigo which causes problems in elevators and on escalators and stairs, motion sickness, several allergies which cause a lot of coughing, and mitral valve prolapse which causes an irregular heartbeat and makes her feel tired all the time (Tr. pp. 227-232). Stevenson also testified her fibromyalgia often causes an all-over bodyache and stiffness which can inhibit sleep; Stevenson said she cannot sit still for long periods and her fingers and hands "lock up a lot" (Tr. p. 232). Stevenson testified that she frequently wore wrist braces when she was working and that her wrists

6

dislocate a lot (Tr. p. 233). Stevenson testified that she has arthritis in her knees, elbows, fingers, wrists, and shoulders (Tr. p. 233). Stevenson has trouble lifting things with her left hand (Tr. p. 234). Stevenson also occasionally has trouble with alopecia due to poor health (Tr. p. 245).

Stevenson takes Atenolol[4] when her heart races, but it makes her feel drugged (Tr. pp. 238-239). Stevenson also takes hyoscyamine for her spastic colon, which makes her mitral valve prolapse act up and makes her sleepy, Amitriptyline as a sleep aid (although it actually keeps her awake), Nexium and Pepcid for acid reflux, Elavil, Claritin for allergies, and Advil (Tr. pp. 239-240). Stevenson is also supposed to walk every day and usually does so for fifteen to twenty minutes (Tr. p. 241).

In high school and college, Stevenson missed a lot of classes due to allergies (Tr. p. 246). Stevenson testified that she does not go grocery shopping, occasionally visits friends or has company, does not go to church, is unable to work in the yard, and cannot sweep the house, but washes her clothes (in a special laundry detergent), cooks when she feels like it (once every one to two weeks), takes care of her personal needs, watches television two to three hours a day, and reads once in a while (Tr. pp. 235-

---

[4] Atenolol is a beta blocker prescribed to treat high blood pressure, prevent angina, and treat heart attacks. It works by slowing the heart rate and relaxing the blood vessels so the heart does not have to pump as hard. MEDLINEplus Health Information, Drug Information: Atenolol, *available at* http://www.nlm.nih.gov/medlineplus/druginfo/medmaster (a service of the U.S. National Library of Medicine and the National Institutes of Health).

237). Stevenson testified that she has trouble sleeping when she has pain or when she has a fast or irregular heartbeat; on a typical night, Stevenson sleeps three and a half to four hours and does not feel rested when she awakes (Tr. pp. 237, 248). Pain sometimes wakes her at night (Tr. p. 247). Stevenson's hands and feet, and sometimes her arms and legs as well, frequently become numb, or "go to sleep" (Tr. p. 246).

Stevenson testified that she can walk up to twenty minutes at a time but only five minutes on a "bad day," stand up to twenty minutes at a time but only five minutes on a "bad day," sit still up to five minutes, climb stairs slowly some days, and reach and hold with her right arm but not her left (Tr. pp. 241-242). Stevenson testified she does not usually sit for more than fifteen minutes (Tr. p. 247). Stevenson further testified that she can lift a gallon of milk (eight pounds) on a regular basis, can stoop or lean forward at the waist some days (although it causes acid reflux), cannot bend, kneel or crouch because her knees lock up, she becomes dizzy, and she cannot get back up, can grip most of the time but tends to "throw" things across the room involuntarily, frequently has trouble concentrating (her "dumb days"), and can follow simple one and two step instructions most days (Tr. pp. 242k-243). The colognes worn by others, as well as environmental factors such as smoke, dust, heat, pollen, heavy odors, and central heating, bother Stevenson's allergies and cause her to have difficulty breathing, cough a lot, and become dizzy (Tr. pp. 243-245). Stevenson testified that the combination of her ailments

8

causes her to have a headache most of the time; she takes Advil for both her headaches and her fibromyalgia pain (Tr. p. 248).

Stevenson's sister, Rachel Shattacks ("Shattacks") testified that she has lived in the same household as Stevenson for the last year and a half. Shattacks testified that Stevenson suffers from allergies, is very sensitive to smells, and has fibromyalgia which causes stiffness if Stevenson sits very long (Tr. pp. 249-250). Shattacks testified that sometimes, when Stevenson is just walking, her knees lock up and she falls, or if she squats she cannot stand up again (Tr. p. 250). Shattacks also testified that Stevenson's allergies may cause severe coughing spells which cause Stevenson to have difficulty breathing or have a black-out spell (Tr. p. 250). Shattacks testified that, when Stevenson goes shopping, she has trouble getting items that are low or high, especially if her hands go numb and lock up, or if her knees lock up (Tr. p. 251). Hypoglycemia causes Stevenson to become weak, dizzy and sick (Tr. p. 251). Also, if Stevenson stays in a store that has strong odors, the smells bother her (Tr. p. 251).

Shattacks further testified that, when Stevenson's blood sugar is low, she has problems with comprehension, dizziness, motion sickness, weakness, and black outs, so Stevenson does not like to drive very much (Tr. pp. 251-252). Shattacks testified that Stevenson has complained about pain in her joints, hands, legs, back, and neck (Tr. p. 252). Shattacks testified that she helps Stevenson open things, pick up things, pry her fingers off things when her hands lock up, and drives her around (Tr. p. 253).

9

Shattacks has seen Stevenson have coughing spells (Tr. p. 253).

The VE testified that Stevenson's past relevant work in the bank's computer operations, filing, and bookkeeping sections was essentially clerical work as a computer operator, which is skilled, light work (Tr. p. 255). The ALJ posed a hypothetical question as to the type of work available to a person of Stevenson's age and education, with the ability to perform light work (lift or carry 20 pounds occasionally and ten pounds frequently, stand or walk up to six hours, sit up to six hours), except for a limited ability to push/pull or lift and carry, no exposure to fumes, chemicals, dust, etcetera, due to allergies, the ability to sit or stand as needed due to stiffness from prolonged sitting, and limited to simple one or two step instructions (Tr. pp. 255-256). The VE responded that such a person would not be able to do her past relevant work, nor would she be able to perform any other work in the economy (Tr. p. 256). The VE also stated that, given Stevenson's testimony in its entirety as to her physical abilities and limitations, there were no jobs in the economy which Stevenson could perform (Tr. p. 256).

### ALJ's Findings

To determine disability, the ALJ applied the sequential process outlined in 20 C.F.R. §404.1520(a) and 20 C.F.R. §416.920(a). The sequential process required the ALJ to determine whether Stevenson (1) is presently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Appendix 1"); (4) is unable to do the kind of work she did in the past; and (5) can

perform any other type of work.  If it is determined at any step of
that process that a claimant is or is not disabled, the sequential
process ends.  A finding that a claimant is disabled or is not
disabled at any point in the five-step review is conclusive and
terminates the analysis.  Greenspan v. Shalala, 38 F.3d 232, 236
(5th Cir. 1994), cert. den., 914 U.S. 1120, 115 S.Ct. 1984, 131
L.Ed.2d 871 (1995), citing Lovelace v. Bowen, 813 F.2d 55, 58 (5th
Cir.1987).

To be entitled to benefits, an applicant bears the initial
burden of showing she is disabled.  Under the regulations, this
means that the claimant bears the burden of proof on the first four
steps of the sequential analysis.  Once this initial burden is
satisfied, the Commissioner bears the burden of establishing that
the claimant is capable of performing work in the national economy.
Greenspan, 38 F.3d at 237.

In the case at bar, the ALJ found that Stevenson has not
engaged in substantial gainful activity since July 1, 2002, and
that she has "severe" impairments of hypoglycemia, fibromyalgia,
gastroesophageal reflux disease, and mitral valve prolapse, but
that she does not have an impairment or combination of impairments
listed in or medically equal to one listed in Appendix 1 (Tr. p.
20).  The ALJ then found that Stevenson has the residual functional
capacity to perform light work with only occasional pushing and
pulling with the upper and lower extremities and no exposure to
fumes, chemicals, smoke or dust, and that she was still able to
perform her past relevant work as a clerical worker (Tr. p. 21).

The sequential analysis thus ended at Step 4, with a finding that Stevenson was not disabled (Tr. p. 21).

### Scope of Review

In considering Social Security appeals such as the one that is presently before the Court, the Court is limited by 42 U.S.C. §405(g) to a determination of whether substantial evidence exists in the record to support the Commissioner's decision and whether there were any prejudicial legal errors. McQueen v. Apfel, 168 F.3d 152, 157 (5th Cir. 1999). For the evidence to be substantial, it must be relevant and sufficient for a reasonable mind to support a conclusion; it must be more than a scintilla but need not be a preponderance. Falco v. Shalala, 27 F.3d 160, 162 (5th Cir. 1994), citing Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 482 (1971). Finding substantial evidence does not involve a simple search of the record for isolated bits of evidence which support the Commissioner's decision but must include a scrutiny of the record as a whole. The substantiality of the evidence must take into account whatever in the record fairly detracts from its weight. Singletary v. Bowen, 798 F.2d 818, 823 (5th Cir. 1986).

A court reviewing the Commissioner's decision may not retry factual issues, reweigh evidence, or substitute its judgment for that of the fact-finder. Fraga v. Bowen, 810 F.2d 1296, 1302 (5th Cir. 1987); Dellolio v. Heckler, 705 F.2d 123, 125 (5th Cir. 1983). The resolution of conflicting evidence and credibility choices is for the Commissioner and the ALJ, rather than the court. Allen v.

12

Schweiker, 642 F.2d 799, 801 (5th Cir. 1981).  Also, Anthony v. Sullivan, 954 F.2d 289, 295 (5th Cir. 1992).  The court does have authority, however, to set aside factual findings which are not supported by substantial evidence and to correct errors of law. Dellolio, 705 F.2d at 125.  But to make a finding that substantial evidence does not exist, a court must conclude that there is a "conspicuous absence of credible choices" or "no contrary medical evidence."  Johnson v. Bowen, 864 F.2d 340 (5th Cir. 1988); Dellolio, 705 F.2d at 125.

Law and Analysis

Eligibility for DIB

     To qualify for disability insurance benefits, a plaintiff must meet certain insured status requirements, be under age 65, file an application for such benefits, and be under a disability as defined by the Social Security Act.  42 U.S.C. 416(i), 423.  Establishment of a disability is contingent upon two findings.  First, a plaintiff must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. 423 (d)(1)(A).  Second, the impairments must render the plaintiff unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy.  42 U.S.C. 423(d)(2).

Issue No. 1 - Listings

1.

     First, Stevenson contends the Commissioner erred by failing to

13

find she suffers from a listed impairment or a combination of impairments which meet or equal a listing, and by concluding that she can engage in substantial gainful activity. Stevenson contends she meets or equals Listing 14.09(D)(1) and (2), Inflammatory Arthritis, due to her fibromyalgia. Stevenson contends her fibromyalgia pain is equivalent to inflammatory arthritis.

Where the impairment is severe, the Commissioner must determine whether the impairment is so severe that the claimant will be presumed to be disabled. This determination is made by comparing the impairment to a specific Listing of Impairments in the SSA regulations. See 20 C.F.R. § 404, Subpart P, Appendix 1. If the claimant's condition is listed, or is medically equivalent to a listed impairment, the claimant is conclusively determined disabled. Cieutat v. Bowen, 824 F.2d 348, 351 n.1 (5th Cir. 1987). Also, Selders v. Sullivan, 914 F.2d 614, 619 n. 1 (5th Cir. 1990). A claimant has the burden of proving that her condition meets or equals an impairment listed in Appendix 1. Sullivan v. Zebley, 493 U.S. 521, 110 S.Ct. 885, 891-92, 107 L. Ed. 2d 967 (1990). See also, Selders v. Sullivan, 914 F. 2d 614, 619(5th Cir. 1990). For a claimant to show that her impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify. Sullivan v. Zebley, 110 S. Ct. at 891. For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in

14

severity to all the criteria for the one most similar listed impairment." Sullivan v. Zebley, 493 U.S. 521, 531, 110 S.Ct. 885 (1990); Selders v. Sullivan, 914 F.2d 614, 619 (5th Cir. 1990) (claimant must provide medical findings that support each of the criteria for the equivalent impairment evaluation); 20 C.F.R. § 404.1526 (medical findings must be at least equal in severity and duration to the listed findings); 20 C.F.R. § 416.926 (impairment is medically equivalent to a listing if medical findings related to the impairment are at least of equal medical significance).   A claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." Sullivan, 493 U.S. at 531.

The ALJ is charged with carefully considering all the relevant evidence and linking his findings to specific evidence.   A bare and summary conclusion that a plaintiff does not meet the criteria of any listing is beyond meaningful judicial review.   Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001).

Stevenson contends her fibromyalgia impairment is equivalent to Listing 14.09(D).   Listing 14.09 states, in pertinent part:

14.09, Inflammatory arthritis.   Documented as described in 14.00B6, with one of the following:
   *    *    *
 D. Inflammatory arthritis, with signs of peripheral joint inflammation on current examination, but with lesser joint involvement than in A and lesser extra-articular features than in C, and:
  1. Significant, documented, constitutional symptoms and signs (e.g. fatigue, fever, malaise, weight loss), and
  2. Involvement of two or more organs/body systems (see 14.00B6d).   At least one of the organs/body systems

must be involved to at least a moderate level of severity.

The Social Security Administration recognizes Fibromyalgia Syndrome (FMS) and the American College of Rheumatology criteria for FMS, which includes a minimum number of tender points. See Social Security Ruling 99-2p, "Evaluating Cases Involving Chronic Fatigue Syndrome (CFS)," 1999 WL 271569, *8 n.3 (1999). According to the criteria set forth by the American College of Rheumatology, the presence of 11 of 18 tender points (defined as mild or greater tenderness) in the presence of widespread pain provide the most sensitive, specific, and accurate criteria for the diagnosis of primary, secondary-concomitant, and the combined fibromyalgia syndrome. See, "Criteria for the Classification of Fibromyalgia (1990)," at www.rheumatology.org/publications/ classification/fibromyalgia. See also, Stedman's Medical Dictionary, 27th ed.:

> "Fibromyalgia is a complex rheumatic condition with no known cause or cure. The American College of Rheumatology has established diagnostic criteria that include pain on both sides of the body, above and below the waist, as well as in an axial distribution (cervical, thoracic, or lumbar spine or anterior chest); additionally there must be point tenderness in at least 11 of 18 specified sites."

The principal symptoms are "pain all over," fatigue, disturbed sleep, stiffness, and--the only symptom that discriminates between it and other diseases of a rheumatic character--multiple tender spots, more precisely 18 fixed locations on the body (and the rule of thumb is that the patient must have at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause

16

the patient to flinch. <u>Sarchet v. Chater</u>, 78 F.3d 305, 306 (7th Cir. 1996). Some people may have such a severe case of fibromyalgia as to be totally disabled from working, Michael Doherty & Adrian Jones, "Fibromyalgia Syndrome (ABC of Rheumatology)," 310 British Med.J. 386 (1995), but most do not. Fibromyalgia is a rheumatic disease and the relevant specialist is a rheumatologist. <u>Sarchet</u>, 78 F.3d at 307.

As noted by the ALJ in her opinion (Tr. p. 16), Stevenson's medical evidence does not show that she has ever had 11 or more out of a possible 18 tender points, although the diagnoses were fibromyalgia or possible fibromyalgia; in fact, only one medical record reviewed the tender points and found only six.

Moreover, Stevenson's medical records do not include documented joint inflammation, as required by Listing 14.09. Finally, Stevenson's doctors were all of the opinion that Stevenson can and should work.

Since Stevenson has not shown that she meets or equals Listing 14.09, substantial evidence supports the Commissioner's conclusion that Stevenson does not meet or equal Listing 14.09.

2.

Stevenson also contends she cannot work due to pain. The mere existence of pain is not an automatic ground for obtaining disability benefits. The factual determination of whether the claimant is able to work despite some pain is within the discretion of the Administrative Law Judge and will be upheld if supported by substantial evidence. <u>Fortenberry v. Harris</u>, 612 F.2d 947, 950 (5th

17

Cir. 1980).

A claimant's symptoms, including pain, will be determined to diminish a claimant's capacity for basic work activities to the extent that the claimant's alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. §404.1529(c)(4).  Subjective complaints of pain must be corroborated by objective medical evidence.  Chambliss v. Massanari, 269 F.3d 520, 522 (5th Cir. 2000).  Although severe pain can constitute a nonexertional impairment, pain is a disabling condition only when it is constant, unremitting and wholly unresponsive to therapeutic treatment.  Chambliss, 269 F.3d at 522.

While pain can be severe enough to create a disabling condition, the evaluation of a claimant's subjective symptoms is a task particularly within the province of the ALJ who has had an opportunity to observe whether the person seems to be disabled. Elzy v. Railroad Retirement Bd., 782 F.2d 1223, 1225 (5th Cir. 1986); Loya v. Heckler, 707 F.2d 211, 215 (5th Cir. 1983).  The ALJ's decision on the severity of pain is entitled to considerable judicial deference.  James v. Bowen, 793 F.2d 702, 706 (5th Cir. 1986); Jones v. Bowen, 829 F.2d 524, 527 (5th Cir. 1987).  Such a credibility determination is within the province of the ALJ. Carrier v. Sullivan, 944 F.2d 243, 247 (5th Cir. 1991); Wren v. Sullivan, 925 F.2d 123, 128-29 (5th Cir. 1991).  Hence, the law requires the ALJ to make affirmative findings regarding a claimant's subjective complaints and articulate his reasons for

rejecting any subjective complaints.   <u>Falco v. Shalala</u>, 27 F.3d

162, 163-64 (5th Cir. 1994).

The ALJ made the following findings as to Stevenson's pain and

credibility (Tr. pp. 18-19):

> "While the undersigned acknowledges that the claimant may
> not be pain free, it is difficult to assume that her pain
> is of a disabling nature when her activities of daily
> living clearly indicate otherwise.  She reported an
> ability to complete personal hygiene tasks, perform
> routine household chores, prepare meals, drive, and take
> walks.  Despite the claimant's allegations of severe
> pain, her description of daily activities was not limited
> to the extent one would expect given the complaints of
> disabling symptoms and limitations.
>
>    *    *    *
>
> "In this instance the claimant does not have any of the
> signs or stigmata frequently observed in the patient who
> suffers constant, unremitting pain which is totally
> unresponsive to therapeutic measures. ...
>
> "The Administrative Law Judge notes the existence of
> inconsistencies in the claimant's testimony.  While the
> claimant testified to an ability to sit for only five
> minutes, she managed to remain seated during the hearing
> for in excess of one hour.  She did not appear to be in
> any discomfort and did not make a request to change
> positions.  Such inconsistencies detract from the
> claimant's credibility.
>
> "To the extent the claimant contends that she can perform
> no work on a sustained and consistent basis, the
> Administrative Law Judge finds such allegations are not
> supported by the record, and therefore are not entirely
> credible."

Since the ALJ in this case has made the mandatory indication

of the basis for his credibility choices concerning claimant's

complaints, and since his choices are not unreasonable, his finding

that Stevenson's pain would not prevent Stevenson from performing

light work is proper.   <u>Carry v. Heckler</u>, 750 F.2d 479, 485-86 (5th

Cir. 1985).   The medical evidence of record shows Stevenson can

perform light and sedentary work with limitations, and the ALJ

concluded she can perform light work with limitations.  Nothing in the record indicates that Stevenson is disabled by pain.  Moreover, Stevenson's medical records show her pain from fibromyalgia is being controlled by Advil.

Since Stevenson failed to carry her burden of proving she suffers from disabling pain, substantial evidence supports the Commissioner's conclusion that Stevenson is not disabled by pain.

3.

Finally, Stevenson also argues the ALJ should have consulted a medical expert to assist her in deciding whether Stevenson's fibromyalgia and other complaints meet a listing.  However, the claimant has the burden of proof in establishing a disability.  The ALJ has the discretion to order a consultative examination.  An examination at government expense is not required unless the record establishes that such an examination is necessary to enable the ALJ to make the disability decision.  Anderson v. Bowen, 887 F.2d 630, 634 (5th Cir. 1989).  Also, Brock v. Chater, 84 F.3d 726 (5th Cir. 1996); Wren v. Sullivan, 925 F.2d 123, 127 (5th Cir. 1991); Haywood v. Sullivan, 888 F.2d 1463, 1472 (5th Cir. 1989).

There are numerous consultative examinations in the record already.  Nothing in the record at bar shows another expert or examination was necessary.  No examining or treating physician found Stevenson was unable to work.  Moreover, Stevenson's attorney did not request a consultative exam.  Since there is sufficient evidence for the ALJ to have decided that Stevenson did not meet a listing and was not disabled by pain, appointment of an additional

20

expert was not warranted.

The ALJ did not abuse his discretion in not retaining another medical expert for consultation.

Ground No. 2 - Residual Functional Capacity

Stevenson also contends the ALJ erred in finding she has the residual functional capacity to perform a wide range of light work.

A claimant's impairments may cause physical or mental limitations that affect what she can do in a work setting. Residual functional capacity is a medical assessment, based upon all of the relevant evidence, of the work a claimant can perform despite his or her limitations.  20 C.F.R. §404.1545, §416.945. Although the burden of proof in a disability case is on the claimant to show that she is unable to perform her usual line of work, once that fact is established, the burden shifts to the Commissioner to show the claimant is able to perform some other kind of substantial work available in the national economy.  Herron v. Bowen, 788 F. 2d 1127, 1131 (5th Cir. 1986), and cases cited therein.  Also, Babineaux v. Heckler, 743 F.2d 1065, 1067 (5th Cir. 1984).  The Commissioner has the burden to establish a claimant's residual functional capacity.  Leggett v. Chater, 67 F.3d 558, 565 (5th Cir. 1995).

At the administrative hearing, the ALJ posed a hypothetical question to the VE which incorporated most of the complaints Stevenson testified to at her hearing (light work, except for a limited ability to push/pull or lift and carry, no exposure to

fumes, chemicals, dust, etcetera, due to allergies, and having to sit/stand as needed due to stiffness from prolonged sitting, and limited to simple one or two step instructions).

However, after review of both the medical evidence and the testimony, the ALJ concluded that Stevenson can perform light work[5] with only occasional pushing and pulling with the upper and lower extremities and no exposure to fumes, chemicals, smoke or dust. The ALJ found Stevenson's residual functional capacity did not preclude her from performing her past relevant work and, therefore, ended the analysis as Step 4 with a finding that Stevenson is not disabled.[6]

The only doctor to place specific limitations on Stevenson's work activity was Dr. Broadwell,[7] who stated that patients most often do not get better if they stop working, and that Stevenson can perform light or sedentary work which permits her to move about, but with no sustained or repeated flexion of the neck or

---

[5] "Light work" is defined in 20 C.F.R. § 404.1567(b) and § 416.967(c) as follows: "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities."

[6] Although the ALJ went on to Step 5 "out of an abundance of caution" and discussed the VE's testimony and the medical-vocational guidelines in Appendix II, it was unnecessary, so the Step 5 analysis will not be discussed in this report.

[7] The psychologist concluded that Stevenson's emotional and/or mental problems did not affect her ability to work.

back, no heavy lifting, no sitting more than 30 to 45 minutes, and
no standing still more than 15 to 30 minutes (Tr. p. 163).

It is not clear why the ALJ ignored the doctor's specified
limitations and made medical findings of her own, findings which
the ALJ is not qualified to make.[8]  However, it is apparent that,
even with the additional limitations imposed by Dr. Broadwell, of
no sustained or repeated flexion of the neck or back, no heavy
lifting, no sitting more than 30 to 45 minutes, and no standing
still more than 15 to 30 minutes, Stevenson can still perform her
past relevant clerical work.   Stevenson's benefits application
states she walked up to one hour total per day, stood up to one
hour total per day, sat up to two hours total per day, did not have
to lift more than ten pounds frequently (though she "very rarely"
lifted a fifty pound box of paper a few feet when the printer ran
out of paper[9]).  Stevenson's description of her job is compatible
with the physical limitations imposed by Dr. Broadwell.

Therefore, even though the ALJ's analysis of Stevenson's
residual functional capacity was partially incorrect, the result
would be the same had it been done properly.  Substantial evidence
of record supports the Commissioner's final decision that Stevenson

---

[8] Administrative Law Judges have been warned by the courts
against "playing doctor" and making their own independent medical
assessments.   Frank v. Barnhart, 326 F.3d 618 (5th Cir. 2002).

[9] Apparently, Stevenson could have opened the box and
carried a couple of packages of paper over to the printer at a
time, instead of trying to carry the entire fifty pound box all
at once.

is not disabled.

## Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that Stevenson's appeal be DENIED AND DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 16th day of February, 2007.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE

24